GARLICK (HALSEY v.). See Case No. 5,-
965.

GARLINGHOUSE (UNITED STATES v.).
See Case No. 15,189.

GARNER (CONTEE v.). See Case No. 3,139.

## Case No. 5,243.

### Ex parte GARNET.

[7 Leg. Int. 174.]

Circuit Court, D. Maryland. Oct. 18, 1850.

SLAVERY—RECLAMATION OF FUGITIVE UNDER ACT
OF SEPT. 18, 1850 — CHARACTER OF PROCEEDING
—METHOD OF PROOF—AUTHENTICATION OF WILL
—COMPETENCY OF WITNESSES—CONTINUANCES—
PRESUMPTIONS.

[1. In a proceeding under the act of September 18, 1850 (9 Stat. 462), a person claiming as executor and legatee of the master, from whom the fugitive is alleged to have escaped, cannot prove title by a will or letters testamentary, not authenticated before any judge or magistrate of the state from which the escape was made, either in the manner prescribed by that act or by the judiciary act of 1790.]

[2. Where the person claiming the fugitive has not taken his title papers and the depositions of his witnesses before a judge or magistrate of his own state, and had them certified in the manner prescribed by the act of 1850, his only alternative is to prove the necessary matters of title, ownership, and escape in the court before which the fugitive is brought, according to the ordinary rules of evidence; and paper title may be dispensed with if possession and escape are shown by witnesses.]

[3. In such case the proceeding is civil, and not criminal, in its nature, and the right of property must be proved according to the rules relating to evidence and witnesses which prevail in other suits to recover property; therefore a party in interest is incompetent as a witness.]

[4. A son of the master from whom it is alleged that the fugitive escaped is not a competent witness, when it appears that such master has since died, and there is no competent evidence before the court as to the disposition of his property; for in such case a son is presumably a party in interest. Nor is it competent to examine the son on his voir dire to show that he has no interest.]

[5. The statute having provided a plain and easy method by which the claimant may perfect his proofs ex parte beforehand, if he fails to do so, and, after causing the fugitive to be arrested and brought before the court, is then unable to establish his title by proper evidence, the court will not grant him a continuance, even until the next day, for the purpose of supplying his previous omissions, but will at once discharge the alleged fugitive from arrest.]

[6. Title in an executor or legatee can be shown by oral evidence only by proof that he had the fugitive notoriously in his own possession as a slave; but where it is in proof that the fugitive escaped from the person under whom the executor or legatee claims, then the title of the latter can only be shown by the will, properly authenticated.]

[7. There is no presumption that a son of one from whom a slave escaped, and who has since died, would, by virtue of the relationship, have title to the slave. The presumption only goes to establish an interest.]

Henry Garnett was before the court on a warrant issued on the affidavit of Thomas Price Jones, of Cecil county, Maryland. The affidavit set forth that the claimant was the executor and residuary legatee of Benedict Jones, deceased; that Henry Garnett belonged to the estate of Benedict Jones; that he was held to labor for a term of years, and that said Henry had run away from his owner, as long ago as the year 1842. The prisoner was brought before his honor, Judge Grier, on the afternoon of the preceding day, when, on motion of William S. Pierce, Esq., one of his counsel, the hearing of the case was continued until the following morning at nine o'clock.

David Paul Brown, Charles Gibbons, Robert P. Kane, and William S. Pierce, for prisoner.

Hugh Tener, for claimant.

Before GRIER, Circuit Justice, and KANE, District Judge.

GRIER, Circuit Justice. We will proceed to hear the case of Henry Garnett, an alleged fugitive. The claimant will proceed to show his right to our certificate, under the act of congress of September 18, 1850.

Mr. Tener.—I submit to your honors, two wills. The first will is the will of Margaret Sanders, which was made upon the 29th of December, 1838. The second is that of Benedict Jones.

Mr. Gibbons.—I call your honors' attention to these two wills. You will find that they are not so certified under the act of congress, as to make them admissible in this case. I believe there is only one mode by which the record of one state can be admitted in evidence in another, and this is provided for by the act of congress of 1790 [1 Stat. 122]. Your honors will find, upon examination of these papers, that they contain simply a certificate of the register of wills. (The sixth section of the fugitive slave act was then read by the counsel.)

Judge GRIER.—We are bound to know the seal of every one of the United States. Are these papers under the seal of any court?

Mr. Tener.—Yes, sir—under the seal of the orphans' court, Cecil county.

Mr. Gibbons.—These are no more than letters testamentary, issued on the 17th of July, 1849, of course not made out in accordance with the recent act, and in fact not authenticated according to the act of 1790. We do not now know whether this person is really the executor of this estate or not, and I think the parties should be allowed no latitude, but should come fully prepared.

Mr. Tener.—I do not offer the will to prove that Mr. Jones is the executor of Benedict Jones, but that he is the residuary legatee.

Judge GRIER.—That renders the objection still stronger. Benedict Jones is dead, and the present claimant must show that he is the owner himself, either as executor or legatee. The party has not pursued the course laid down by the act of congress. It has pointed out a very simple way. He

might have taken his witnesses before a magistrate and established his claim, and submitted the whole proof of ownership; and then nothing would have been left for us but the proof of identity. If he will not go to the expense of employing counsel and taking the proof which the act provided for, but puts himself upon other proof not so taken, he must establish his claim according to the ordinary legal principles of evidence. The party has not pursued the proper course; he should have taken his witnesses before some judge or justice of the peace, and have taken his depositions ex parte with regard to these matters of title, ownership and escape; then there would have been nothing for us to do but to prove the identity. Where a person has not attempted to follow the law laid down for his own advantage, we cannot relax the rules of evidence for him. With regard to the first paper, there may have been a seal on it—there is something like a seal with a horse's head on it. The law has pointed out a plain way, by which, if a person chooses to follow, he can bring all the evidence, both of title and escape, before us, leaving nothing open for us but the question of identity; but here the party has not taken the plain course, and these wills cannot be received.

Mr. Brown.—It is important, this being the first case, that the whole manner of proceeding should be clearly determined.

Judge GRIER.—I will give every man his rights here, with regard to nothing but the law of the land; and I will, if in my power, enforce it against all opposition.

Mr. Tener.—According to this sixth section, the deposition is to be taken by the judge or commissioner before whom the fugitive is brought.

Judge GRIER.—You might have brought your witnesses all from Maryland here and taken the depositions before us, or you might have gone before some officer there, and made all the proof of ownership or escape before him; or you may do the same thing in effect, if you can produce the witnesses before the court here.

Mr. Tener.—We have got these witnesses.

Judge GRIER.—Very well.

Mr. Tener.—I offer the will of Benedict Jones, because the seal of that court is conclusive as to the competency of the proof.

Judge GRIER.—This is a point just decided by the court. This has not been done in pursuance of this act. It would have been so easy for you to have gone to a judge or justice in Maryland and produced this before him, and have had it all certified by him and proved under the seal of the court. This would have been good and sufficient.

Mr. Brown.—It is precisely like the requisition of one governor upon another, leaving only the question of identity.

Judge GRIER.—Yes.

Mr. Tener offered a certificate to prove that the magistrate who signed certain affidavits, was a magistrate of the state of Maryland.

Judge GRIER.—These papers are evidence for all they can prove.

Mr. Tener.—I will offer evidence of parties in court at the present time, who knew this man to be a slave.

Judge GRIER.—If you can show that he was there in the possession of this plaintiff, claiming him there, and known notoriously as his slave, as a horse is known as the property of a man here, very well.

Mr. Tener.—We can show that he belonged to Benedict Jones.

Judge GRIER.—Suppose that is true, you must show that some living man owns him now, to whom he can be awarded. If you can show that he was ever in the possession of this plaintiff, you can dispense with paper title. The title does not necessarily appear upon record, but proof of notorious ownership, will be received.

Mr. Tener.—We will prove that this man was the slave of Benedict Jones, and escaped in 1842; that Benedict Jones has died, and we offer these letters testamentary as prima facie evidence that T. P. Jones is executor of that estate. We have witnesses in court who know the fact of his being the executor.

Judge GRIER.—These papers (certain affidavits before magistrates in Maryland) are received in evidence. (Mr. Tener reads paper.)

Richard Semans sworn. Examination in chief by Mr. Tener.—"I live in Philadelphia; did live in Cecil Co., Md.; I left there last February a year; I knew a negro boy named Henry; it was said he was a slave. He was in the employ of Benedict Jones and Thos. Jones; they claimed him as their slave. I knew him eight years ago, at the time he left. I was born in Kent county and removed to Cecil county. I first became acquainted with Henry in 1838; he was then in Mr. Jones' employ, to the best of my recollection; it was said he belonged to him, and I was under the impression that he did. I can't say how long he continued in Mr. Jones' employ. In 1842 he left the employ of Mr. Jones; he belonged to the estate of Benedict Jones; when he escaped he was in the employ of Benedict Jones, and said to be his slave, and to the best of my knowledge was so. I have seen the man who has been arrested, and he is the same Henry; I have no doubt about it. Benedict Jones died since I have been in the city. It was said this man was a slave for a term of years; I can't say how long. I heard he was to be free in time. Henry was seventeen years old at the time of his escape; he was reputed to be so. At the time he left Mr. Jones his term of service had not expired. He was not set free by Mr. Jones."

Cross-examined by Mr. Brown.—I am twenty years old on the 25th of next January. I first knew this boy twelve years ago; I was

then not eight years old. I lived on the adjoining farm; I never measured the distance. I never knew him in Kent county; I moved into Cecil county in 1837. I am not related or connected with Mr. Jones, the claimant; we were neighbors and friends. I can't say that I knew Henry, prior or subsequent to 1838, as residing with anybody else. I knew him to be a slave of Mr. Jones. I was informed by Mr. Benedict Jones that he was held for a term of years, and not for life. I can't say when Mr. Jones informed me this; as near as I can recollect it was in 1840. I got the information from Mr. Jones when he was speaking to my father, and I had hold of his hand at the time. It was at Benedict Jones' house. I can't say if I ever heard him speak on that subject before or since. He was asked the question if the boy belonged to himself, by my father, and Mr. Jones said he did for a term of years. I have no recollection that anything was said as to the duration of the term; I don't know if my father asked him how long; I can't tell how my father happened to ask if he belonged to him, I didn't inquire.

Question.—How do you fix 1840 as the time of the conversation?

Witness.—Because, as nearly as I can recollect, that was the time. It was after the election of Gen. Harrison; I can't say whether it was before the inauguration or not. I last saw Henry in 1842 at Mr. Benedict Jones'; I was not in company with my father. I was at work on the farm with him. Except the conversation referred to in 1840, in which he was said to be a servant for a term of years, I have had no conversation in particular with anybody on that subject to my recollection; I recollect no conversation definitely but that. That was the ground on which I say he was a slave, and also from hearing it from the family in general, from his sons, and hearing him say it himself, and seeing him in the possession of this man. He was called Mr. Jones' slave, and I was always under the impression from them that he was a slave for a term of years, and at that time. I never heard for how long; since he has left, I have heard. I continued to live in Cecil county till two years ago, next February. B. Jones died since I came to Philadelphia, within the last two years. I have not seen Henry since 1842, till he was brought here yesterday. He bears a mark on his right cheek by which I can identify him. There is none other, except a familiar face; I recognized him as being the man. I remembered the mark on his face since 1842, and spoke of it before I saw him yesterday, and I directed my attention to it the first thing when I entered the room. I was in the company of T. P. Jones, Edward Semans, and another Mr. Jones. There was a doubt on my mind as to its being the person, at the time I entered the room, and I expressed that doubt to Mr. Thomas Price Jones; I said I could not say it was him,

till he was brought to the light. I did not say at first that I did not think it was the man. Nobody spoke to me before I examined him with regard to the scar on his face; I spoke about it before I saw him, to Messrs. T. P. and J. W. Jones, Mr. Edward Semans and Mr. J. C. Ferguson. That was before the claim was made. It was night before last, at about 8 o'clock, at the Red Lion Hotel; the negro was not arrested then. I don't live at the Red Lion Hotel, but went there to see my friends, the Messrs. Jones. They had called at my place of business in the afternoon; no papers were exhibited to me there; there was no conversation to me on the part of these gentlemen about marks; I remarked to them that the scar was on his face, and that I should recognize him by it; the scar is on his right cheek, between the cheek bone and the nose; I had no knowledge of the cause of the scar; I carried that impression with me since 1842; there was no other mark; he is not a very dark, nor very light man; I should say he was a medium. Mr. Jones told me they were in pursuit of him; he said he knew where he was, but I didn't ask him where. I can't tell how many colored people were in the employ of Mr. Jones in 1838; I can't tell what marks were on them, except one who had a cut foot, and it left quite a scar; I knew of the accident. I never inquired as to the cause of this mark on Henry; it appears to be a cut, but I can't say what it is; I can't say if it was on him from 1838; I noticed it before 1842, but how long I can't say; I never spoke to him about it; I have not been written to in relation to him since I have been here; I don't recollect having been spoken to in regard to him between '42 and the present time. I have been to Cecil county twice a year since I moved here. I have not, to my recollection, spoken of him particularly then, I have had no direct conversation about him while there.

Re-examination.—I had worked some three years in company with Henry, to and fro, not constantly, so that I had every opportunity of becoming acquainted with his person.

By Mr. Brown.—Benedict Jones had two sons, T. P. Jones and John Ward Jones, and three daughters; the Messrs. Jones present are his sons.

John Ward Jones, sworn. Mr. Brown.—I have an objection to make to the admission of this witness, and that objection must refer to the position of the case as it is thus far ascertained by the court. There are no documents before you that affect the question I am about to propound; as the case stands upon the testimony of the witness just examined, it is alleged that this prisoner was a servant for a term of years to Benedict Jones. It is proved also by him that the witness now in the witness box was a son of that Benedict Jones; I object to the examination of this witness on the score of

incompetency from interest. The death of Benedict Jones is proved, and for aught that appears in the course of the testimony, this man is one of the parties interested.

Mr. Tener.—The party before you has no interest in the matter, and his examination on his voir dire will satisfy the court. I take it that even the claimant here, Thomas Jones, is a competent witness to prove the identity of this person, for this is not like a civil case, where a man brings an action of trover for lost property, but it is in the nature of a criminal proceeding, and the claimant may take hold of his property wherever he may find it, as a man who is the owner of any chattel can come into a court of criminal jurisdiction and swear to the ownership of that chattel and claim it there. But this man is a son of Benedict Jones, but has no interest in his will. The party in interest is T. P. Jones, who is the residuary legatee under the will.

Judge GRIER.—The will is not in evidence.

Mr. Brown.—There are two modes of objecting to a witness. We may for want of any other proof, examine him upon his voir dire, but to examine him upon his voir dire after having established his interest is to make him a witness against the character of the objection.

Judge GRIER.—You need not argue that, Mr. Brown, that is of course a matter of every-day practice; as to the rules of evidence they must be the same as in other cases. I did issue this warrant upon the affidavit of a party in interest, it being in the nature in the first place of a criminal proceeding, but when he is brought before us, and we are to investigate the question of property as well as identity, we have two parties before us with their rights. It is like two persons claiming the same goods; this man is his own goods, if I may be allowed the expression, and stands here upon his rights. The same rules will govern us here, and we will receive the same evidence as we would, if the question were of a cow or a horse instead of a human being. I shall not insist upon pretences of doubts, where there are none in my own mind; but then the same rules of evidence which govern in other property must govern in this. You have thus far shown that Benedict Jones was the owner of a slave for a term of years; he died, and the title to the property has gone somewhere, and prima facie, the children are interested in the estate of the deceased.

Mr. Tener.—I perceive that the chief difficulty hinges upon the certificate to this will, and were that difficulty removed, the will would be competent evidence and would show the whole interest in this matter. I have just been informed by Mr. Jones, that at the time he left Cecil county, it was impossible for him to find the proper officers to make the certificates; they were not there; but if your honor will remand the prisoner until to-morrow morning, I will engage to have the proper certificates here, certifying to this will. I think your honor will accede to this. Your honor knows from the state of feeling on this subject, that the moment it is known, that a claimant is pursuing a fugitive, that moment the fugitive is secreted and escapes and there is no opportunity to get him. I would not ask for further time if we had not produced some evidence before you. I think we have shown that he was the slave of Benedict Jones, and escaped, and that one of these parties is the son of B. Jones, and that he has an interest in this man of some shape or other. To prove what his interest is, we offer evidence which your honors decide is incompetent; and we ask for time to produce the proper certificates. It was probably thought by the counsel in Cecil county, that it was enough.

Judge GRIER.—He might have gone before a judge in Cecil county, and had everything done in form.

Mr. Tener.—I am informed by Mr. Jones, that when he left Cecil county, he went in search of the judge and he was not at home.

Judge GRIER.—There has been eight years' delay in this matter and there was no such hurry that he must come off without seeing the judge. He could have had it all done before a judge or justice of the peace; this might have been certified under seal, and everything could have been regular. The marshal is liable in the sum of one thousand dollars,—no matter how great the force to rescue him, he is liable till he delivers him in Maryland, for one thousand dollars. I knew the excitement this arrest would cause, and I was determined, that if he made good his case, I would at all expense carry out the requirements of the law.

Mr. Brown.—I understood this application on the part of the learned counsel to be for a postponement of this case. He selected his own time, his own place, made his own preparation, attempted enforcing his own law, and now, after all these opportunities thus afforded, he asks for a delay. I begin by saying to the learned counsel, and to all others in a similar dilemma, "be certain you are ready before you begin;" that is essentially necessary. What have they done? The counsel offers, first, documents that he admits not to have been regularly authenticated; he offers them to you as evidence in this judicial proceeding, having restraint upon liberty. Why is all this? Why offer this document if he knows it is wrong?—The act of congress authorizing your honors to sit on this question does not make you captors of fugitive slaves; does not require you to convert your court room into a prison till the party is ready to make good his claim. It all depends upon the actual establishment of this claim, and the law does not contemplate the continuance of the man in prison till somebody can establish his want of liberty. If the slave himself applied to your honors for continuance, it would be with difficulty

that he would obtain it, yet he is summoned here at their own time without any preparation on his part at all. They have had two or three days, and as many months and years for all I know; they might have come before your honors fully prepared. Why, then, will you give them this extension? Is there any reason for it? Is the right of the respondent to be entirely disregarded? If they can continue it till to-morrow, the same principle would authorize them to continue it a week, and with an acquiescent court they might continue it for a month or a year; and this man is to be held in bondage here, to show that they are entitled to hold him in bondage there. Your honors will do a great good by holding a tight rein over this proceeding; give these men to understand that if they prove their right you will enforce it; give them to understand, however, that they are to prove it, and to come ready, and not like the foolish virgins, with no oil in their lamps, when it is their business to enlighten us. Your honors will not be required to strain a point to give them an extension of time. I remember a case before his honor Judge Kane; when three o'clock had arrived, the claimant suggested that the hour of adjournment had arrived, and the judge said, "I am here to determine this question, and I shall not shut my eyes on the subject; you are bound to come prepared; you are not prepared, and I will not relieve you; settle the question now." They were not prepared and the man was discharged. Your honor has spoken of resistance to the law; I know you know me too well to suppose that I have any refractory disposition; my application now is that the law may be enforced, but their application is to modify it; I will not say that they may steal a victory, but that they may get it in an irregular way. You have done the poor man whom we represent a great wrong, if you suppose he would resist the law. His liberty is not to be effected by an insurrection, and not only has he been wronged, but the gentlemen who have thought proper to help him have been wronged, if it is supposed they would connive to a rescue.

Judge GRIER.—I said that I had reason to believe there were emissaries abroad attempting to get persons to resist the law.

Mr. Brown.—It will be found that, let men contrive as they will, there is a supervising power who will shape our ends, rough-hew them as we will. I conceive it to be a great blessing that this matter was brought before one of the first tribunals of the country, and, I ask, will you give these persons time? The result would be an application on our part for time, and so the matter would go on. There are two sides to this question. Your honor has spoken of rebellion against the capture of fugitive slaves, but there is a rebellion to capture those who are not slaves. Will your honor give them time? If you do, it will be a precedent which shall last for all time to come, and it is a precedent that will pass into the hands of every subordinate individual occupying your places, and they will build their indulgence on what you now do. I ask you, therefore, upon this ground, that, being the highest court known to the law, you can decide the case, and give the influence of example to affect all other tribunals, to which a similar application may be made.

Mr. Tener.—This claimant has rights here as well as this respondent. The respondent's rights were listened to upon yesterday, when he applied through the gentlemen who then represented him for an extension of time till this morning. That was granted to him by your honor. The gentleman says that the principle which would justify extending the time till to-morrow, would justify extending it a week or a month, but I only ask an extension till to-morrow, and then if the evidence is not full and conclusive before you, in addition to what has been presented, (for I think that from the evidence presented we have made out a case strong enough to warrant the marshal in holding this person till the time we ask for has expired.) The law contemplates the marshal's holding the person in charge.

Judge GRIER.—There is a difference here between the plaintiff and defendant. The one has had his own time, and could have had his proof all ready, while the other is brought here without any preparation whatever.

Judge KANE.—A difficulty occurs to my mind in the claimant's own reason for the grant of a postponement. More than the time which he now asks, and within which he tells us the proof can be perfected, has elapsed since the capture of this prisoner. You have had the time, and you could just as well have perfected the proofs within that time as you can now if a continuance is granted.

Judge GRIER.—He has had the choosing of his own time, and he has had eight years to do it in; and since this act was passed he had plenty of time to have it done in order. The law has pointed out a plain road, and the party was warned yesterday, as far as I had a right to warn him, to be prepared.

John Edward Ferguson sworn. Examined in chief by Mr. Tener.—I live in Cecil county, Md., about six miles from Mr. T. P. Jones' residence. I suppose I have lived there about 22 years. I knew Benedict Jones, the father of T. P. Jones. I think he died in June, '49.

Mr. Tener.—Who acted and does still act as executor and administrator of his estate? (Question objected to by counsel for prisoner.)

Judge GRIER.—The farthest I will go is this—If the man, as executor, had this man notoriously as a slave, it will be received in evidence. But you have got him away, and the man who owned him is dead, and you cannot do this now.

Mr. Tener.—If we show that this man is

notoriously the executor of Benedict Jones, and claims all of his property, then he can claim this part of his property.

Judge GRIER.—If you want to show a title, without the evidence of possession as executor, it cannot be done but through the will, and that properly proved.

Mr. Tener.—He would have a title as the relative.

Judge GRIER.—No! he would have an interest, but there is a difference between interest and title.

Examination of witness continued:—I can say that I knew this boy Henry. I know nothing about him.

Edward Semans sworn. Examination in chief.—I live in Philadelphia. Have lived in Cecil county, Maryland. I left there about five years ago, in January, '46. I moved there in the winter of '37.

Judge GRIER.—I would suggest to the counsel, if it is worth while to take up time, till you have filled up this hiatus. If you can only prove that he was the slave of a man who died in '49, and cannot fill up this hiatus, there is no use to take up the time with it.

Mr. Tener.—Will your honor refuse our application for time till to-morrow morning?

Judge GRIER.—I am compelled to do it. You have had your own time; the law has made your course very easy. He might have made out his case ex parte, but has failed to do that. He has had this man arrested, and yesterday morning at nine o'clock he was warned so far as the judge had a right to speak on this subject, and I told him to employ proper counsel. This man is in the possession of the marshal here, at a risk of one thousand dollars every minute. If I put it off for him last night, it was because he was brought here without any preparation; he must have some rights, and it was no very great relaxation to put it off to court hours. My only difficulty was the risk of the marshal, as the laws of Pennsylvania deny us the privilege of holding this man in custody.

Mr. Gibbons explained the way in which the law referred to came to be passed.

Judge GRIER.—We have only to say now, that the party has failed to make the necessary proof, and that the prisoner has a right to be discharged, and is discharged.